Henry C. ADAMS, Jr., et al.,
Plaintiffs–Appellants,

v.

The BUDD COMPANY, et al.,
Defendants–Appellees.

No. 87–1771.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 3, 1987.

Decided May 5, 1988.

Rehearing Denied July 6, 1988.

Gilbert King, Jr., MacArthur Drake, Drake & Assoc., Gary, Ind., for plaintiffs-appellants.

Nora L. Macey, Segal & Macey, Indianapolis, Ind., John C. Wright, Jr., Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendants-appellees.

Before BAUER, Chief Judge, RIPPLE, Circuit Judge, and WILL, Senior District Judge.[*]

WILL, Senior District Judge.

Plaintiffs, 31 former employees of the Budd Company's Indiana plant ("Budd"), filed this action alleging that Budd violated their preferential hiring rights under a collective bargaining agreement by refusing to hire them at other Budd facilities after they were laid off. Plaintiffs also sued their collective bargaining agent, Local 1122 of the United Automobile, Aerospace & Agricultural Implement Workers of America ("the union"), alleging that the union breached its duty of fair representation by refusing to arbitrate their charge that Budd violated the collective bargaining agreement. The district court granted summary judgment in favor of both defendants. We affirm.

### I.

The undisputed facts on appeal reveal the following. The Budd Company is a manufacturer of automobile and truck body parts. It has two plants in Philadelphia and other plants in Tennessee, Michigan, and Ohio. Until November 1982, Budd also operated a plant in Gary, Indiana, which closed due to business conditions. The plaintiffs in this action were all employed by Budd's Gary facility. All were laid off between 1979 and 1980; they had not been recalled when Budd shut the Gary plant down. The following agreements set the terms and conditions of future employment for laid off workers in the Gary plant: a National Production and Maintenance Agreement; a local supplemental agreement; a letter agreement on preferential hiring; and a plant closedown agreement negotiated in October 1982.

These four agreements did not provide the laid-off workers much security. For example, the preferential hiring agreement required only that Budd (1) post job openings for plants covered by the National Agreement, (2) make available applications to seniority employees of the Gary plant on indefinite layoff at its Indiana personnel office, and (3) allow seniority employees to apply through the mail rather than having to apply in person at each Budd facility.

Each application by a laid-off worker under the provisions of the preferential hiring agreement was valid for only six months. After six months, the employee was required to send in a new application if he wished to be considered for employment at other Budd plants. Moreover, under the national and local agreements, preferential hire rights were limited to "seniority employees." Employees could retain seniority status for a maximum of five years after the date of layoff, or for a period equal to total seniority, whichever was less. Finally, laid-off senior Gary employees were not given absolute preferential hiring rights; the July 27, 1982 letter agreement provided instead that laid-off employees were entitled to consideration for employment at other plants but that Budd reserved sole discretion to establish "local plant hiring eligibility requirements" and to reject employees on the basis of these local standards.

* The Honorable Hubert L. Will, Senior District Judge of the Northern District of Illinois, sitting by designation.

Budd closed its Gary plant in November 1982. Between 1982 and 1984, laid-off Gary employees submitted approximately 550 applications for openings at surviving Budd plants. One hundred and sixty of these employees eventually got jobs at other Budd plants; none of the plaintiffs ever received offers of employment.

In February 1984, a group of laid-off employees formed "The Committee of Former Budd Employees" ("the Committee"). All of the plaintiffs were members. The Committee sent a letter on March 7, 1984 to Dallas Sell, a director of the union, asking for assistance with their problems involving the recall and relocation practices of Budd's Philadelphia plant. On March 9, 1984, Owen Beiber, the President of the union, wrote back stating that he was referring the Committee's correspondence to the union's "Budd Company Department" for "investigation and follow-through."

Thomas Rodgers, the International Representative of the union's Budd Company Department, investigated the Committee's complaints. Rodgers obtained from Budd the personnel records of 24 Committee members denied employment. On April 10, 1984, Rodgers wrote the Committee that he had investigated Budd's refusal to hire them and that he was enclosing employment records which contained information on why Budd had denied them jobs at other plants. Rodgers stated: "It is for the reason shown that the Company refuses to hire you at the Philadelphia plant. If you have any further questions, do not hesitate to write to me."

Approximately one year later (and following two successive National Labor Relations Board dismissals of unfair labor practice charges filed by the Committee against the union), plaintiffs again submitted applications to Budd for jobs at other plants. By this time, however, fifteen of the former employees had lost their seniority rights (including the right to assert breach of the collective bargaining agreement) because five years had passed since Budd had laid them off. Moreover, because Budd had closed the Gary area personnel office the previous summer, Budd was no longer accepting mailed applications for preferential hire. When Budd denied the plaintiffs' February 1985 applications, the plaintiffs again asked the union to file grievances. Rodgers, however, refused this request because, he alleged, plaintiffs' applications were both untimely and without support in the contract.

Plaintiffs subsequently filed this action against Budd and the union alleging that the union breached its duty of fair representation, and that Budd's failure to rehire them at other plants constituted a breach of the collective bargaining agreement. At the close of discovery, both the union and Budd successfully moved for summary judgment. In granting the defendants' motions for summary judgment, the district court first found that the statute of limitations had run on plaintiffs' claims involving the union's failure to grieve or arbitrate Budd's refusals to hire them at other plants from 1979 through 1984. Second, the court found that although plaintiffs' June 1985 complaint was timely with regard to the union's failure to grieve Budd's February 1985 denials of preferential hire, defendants were entitled to summary judgment as to fifteen of the plaintiffs because they had lost seniority status prior to the filing of the 1985 applications. Finally, the court concluded that the remaining plaintiffs could not pursue their breach of contract claim against Budd because they were unable to establish a necessary element of that cause of action: that is, breach of the union's duty of fair representation.

## II.

At issue is whether the court correctly granted defendants' motions for summary judgment. In a somewhat rambling fashion, plaintiffs raise various arguments on appeal. Many of the specific contentions advanced by the plaintiffs were not raised before the district court and hence were waived. *Hunter v. Allis–Chalmers Corporation,* 797 F.2d 1417, 1430 (7th Cir. 1986); *Evans v. Fluor Distribution Cos.,* 799 F.2d 364, 366 (7th Cir.1986). Here, we need only review two issues: (1) whether

there are material facts in dispute which could establish a breach of the union's duty of fair representation, which breach is a condition precedent to the plaintiffs' suit against Budd for violation of the collective bargaining agreement, and (2) whether plaintiffs' June 1985 complaint was timely as to the union's refusal to grieve Budd's denials of employment through 1984.

■ We first examine whether plaintiffs' claims surrounding the union's failure to grieve Budd's alleged violations of the collective bargaining agreement from 1979 through 1984 are time barred.

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), establishes a federal forum to resolve suits for violation of contracts between an employer and a labor organization. The LMRA contains no statute of limitations for § 301 actions. Yet the Supreme Court has held that the six-month statute of limitations set forth in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), applies to "hybrid § 301/duty of fair representation" claims like the present case. *DelCostello v. Teamsters*, 462 U.S. 151, 154, 103 S.Ct. 2281, 2285, 76 L.Ed.2d 476 (1983). The six-month limitations period begins to run "from the time a final decision on the employee's grievance has been made or from the time the employee discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance." *Richards v. Local 134*, 790 F.2d 633, 636–37 (7th Cir.1986); *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 304 (7th Cir.1983) (union's refusal to file grievance constitutes a final decision that triggers the running of the statute of limitations).

Here, though plaintiffs continually applied and were continually refused employment by Budd from 1979 through 1984, plaintiffs did not file their complaint in the district court until June 17, 1985. Plaintiffs contend that this filing was timely because the union never told them that it had completed its inquiry into plaintiffs' claims that Budd had violated the preferential hiring agreement. Yet, it is clear that plaintiffs knew or should have known as early as April 10, 1984—the date of Thomas Rodgers' letter stating that he had investigated plaintiffs' complaints—that the union intended to take no further action on their grievance request. Following receipt of this letter, plaintiffs were required to file their complaint regarding Budd's denial of their 1979–1984 applications no later than October 10, 1984.

■ Any remaining question concerning the plaintiffs' knowledge of the union's intention is dispelled by the fact that the Committee filed an unfair labor practice charge with the NLRB against the union on May 3, 1984, alleging a breach of the duty of fair representation. Plaintiffs' own actions thus establish that they, too, interpreted Rodgers' letter as a final decision by the union not to pursue their claims. *See Gustafson v. Cornelius Co.*, 724 F.2d 75, 77 (8th Cir.1983) (court may rely on an unfair labor practice charge filed over the same conduct that later gives rise to a § 301 complaint as evidence that the plaintiff knew the union would pursue his grievance no further).

■ Alternatively, plaintiffs argue that even if they had known as of April 10, 1984, that the union would be taking no further action, the six-month statute of limitations should be "tolled" because the union's repeated refusal to process their grievances amounted to a "continuing violation" of its duty of fair representation.

Plaintiffs reliance on a continuing violation theory to revive their time-barred claims is misplaced. As the cases in this circuit make clear, continued union inactivity after an initial failure to respond to a grievance request does not constitute a continuing violation of the duty of fair representation. *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 305–06 (7th Cir. 1983). For example, in *Metz*, the union notified plaintiff on May 5, 1981, that her discharge was in violation of the collective bargaining agreement. In the months that followed, plaintiff repeatedly requested the union to act on her grievance, yet the union failed to respond. Subsequently, the plaintiff filed a hybrid § 301/breach of duty of

fair representation in the district court. The district court dismissed the action as untimely and we affirmed. Specifically, we stated that

> if this court were to permit the cloaking of [the union's] inactivity with illegality by invoking events which occurred more than six months prior to the bringing of this action, it would be in effect reviving a legal non-cognizable unfair labor practice.

*Id.* at 306.

■ Moreover, even assuming that the union's refusal to process plaintiffs' grievances amounted to a continuing violation of its duty to represent the plaintiffs, only complaints based upon conduct occurring within the six-month period preceding the filing of this complaint are timely. *See Ray Lewis v. Local Union 100*, 750 F.2d 1368, 1369 (7th Cir.1984). Thus, the continuing violation theory could not support plaintiffs' assertion that the June 1985 complaint is timely as to any claims arising from Budd's refusal to hire them from 1979–1984 and the union's subsequent refusal to grieve these rejections. For this reason, the district court correctly dismissed as untimely, all claims except those based upon Budd's refusal to hire plaintiffs following receipt of their February 1985 employment applications.

■ We next address whether the union breached its duty by failing to grieve plaintiffs' claims involving Budd's alleged 1985 violations of the collective bargaining agreement. Generally, employees must attempt to exhaust any intra-union appeals before they can maintain a suit against their employer under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *Clayton v. International Union, UAW*, 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981).[1] Once the union makes a final decision on the employee's claim that the employer breached the collective bargaining agreement, the employee may not relitigate the merits of his grievance in a § 301 action against his employer unless he can show that the grievance process was somehow subverted. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). This usually involves showing that the union breached its duty of fair representation. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976) ("To prevail against either the company or the Union, petitioners must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union."). Thus, before plaintiffs can pursue their § 301 claim against Budd, they must meet the burden of showing that the union breached its duty fairly to represent laid-off employees. If plaintiffs are unable to prove such a breach, their § 301 claim is barred. *Huffman v. Westinghouse Electric Corp.*, 752 F.2d 1221, 1223 (7th Cir.1985).

In this circuit "mere negligence" or even "gross negligence" on the part of a union

1. In addition to defending the grant of summary judgment on the ground that there are no facts in dispute that could establish a breach of the union's duty of fair representation, Budd also argues that summary judgment was appropriate because the plaintiffs failed to exhaust internal union appeal procedures and that exhaustion is a precondition to bringing a § 301/fair representation suit. Although plaintiffs represented at oral argument that they had in fact exhausted intra-union remedies, we have found nothing in the record to support this representation. Nevertheless, we decline Budd's invitation to affirm on this ground; for even if plaintiffs failed to exhaust the union's appeals procedure before bringing this suit, this would not necessarily bar plaintiffs' § 301 action as a matter of law.

Where a plaintiff can show one of the following situations, exhaustion of intra-union appeals is not required: (1) that union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; (2) that the internal union procedures are inadequate to either reactivate the grievance or to award him the full relief he seeks under § 301; and (3) that exhaustion of internal appeals would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits. *Clayton v. International Union, UAW*, 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981); *see also Bassett v. Local Union No. 705*, 773 F.2d 932, 935 (7th Cir.1985). Here, in granting summary judgment, the district court did not address the exhaustion requirement and therefore made no findings whether any of these conditions were present in this case.

is insufficient to support an action for breach of the duty of fair representation; plaintiffs must show instead that a union engaged in "intentional misconduct." *Hoffman v. Lonza, Inc.,* 658 F.2d 519, 522 (7th Cir.1981); *Camacho v. Ritz–Carlton Water Tower,* 786 F.2d 242, 243 (7th Cir. 1986). Thus, a "union may be liable if it discriminates against the employees for forbidden reasons (such as race or politics, including the employee's position on the union and its leaders). It is not liable, however, for careless or boneheaded conduct." *Id.* at 244.

Notwithstanding that this circuit has repeatedly "declined all invitations" to overrule the intentional misconduct standard of *Hoffman,* (see e.g., *Camacho,* 786 F.2d at 244; *Grant v. Burlington Industries,* 832 F.2d 76, 79–80 (7th Cir.1987); *Dober v. Roadway Express, Inc.,* 707 F.2d 292 (7th Cir.1983); *Superczynski v. P.T.O. Services, Inc.,* 706 F.2d 200 (7th Cir.1983)), plaintiffs renew the invitation. They argue: (1) that the district court erred in not applying the less stringent standard governing breach of fair representation cases contained in *Baldini v. Local Union No. 1095, UAW,* 581 F.2d 145 (7th Cir.1978); and (2) that the district court erred when it declined to infer intentional misconduct from evidence that the union repeatedly showed a lack of vigor in investigating plaintiffs' complaints.

The district court rejected both these arguments, and we reject them here. To begin with, plaintiffs' reliance on *Baldini* is misplaced. The *Baldini* test (i.e., that a union subjects itself to liability for unfair representation when it arbitrarily or perfunctorily handles a grievance) has been superceded by the *Hoffman* intentional misconduct rule. Although plaintiffs are correct in noting that perfunctory handling of a grievance may be sufficient to establish liability in other circuits (see e.g., *Robesky v. Qantas Empire Airways,* 573 F.2d 1082, 1091 (9th Cir.1978); *Wyatt v. Interstate & Ocean Transport Co.,* 623 F.2d 888, 891 (4th Cir.1980); *Curtis v. United Transportation Union,* 700 F.2d 457 (8th Cir.1983)), this circuit has determined that until the Supreme Court "resolve[s] these

recurring differences ... *Hoffman* stands." *Camacho,* 786 F.2d at 246.

To support their claim that summary judgment was improper even under the more stringent *Hoffman* standard, plaintiffs contend that there is "ample evidence ... in the record as a whole from which the fact-finder or jury could determine that [the union] deliberately and unjustifiably failed to represent plaintiffs." Plaintiffs then assert that intentional misconduct should be inferred from evidence of the union's "repeated and deliberate" refusal to file a grievance.

Taken in its best light, however, the evidence here can only support a claim of inferior representation, and as we have noted, *Hoffman* precludes our reviewing the quality or adequacy of representation. The record shows: (1) that Rodgers relied on Budd's representation that plaintiffs were unemployable because they had allegedly not met "local" hiring standards without any independent investigation; (2) that Rodgers refused to pursue plaintiffs' 1984 grievance request because he believed the union had no sound basis for submitting grievances in view of the restrictive language in the preferential hire agreement that gave Budd sole discretion to establish "local plant hiring eligibility requirements" and to reject employees on the basis of these local standards; and (3) that Rodgers sat on plaintiffs' 1985 grievance request because he had investigated plaintiffs' identical claims of contractual violations a year earlier and found that, given the language of the preferential hire agreement, they were without support.

■ Thus, Rodgers' actions, perfunctory though they may have been, do not come close to the level of intentional misconduct envisioned by the *Hoffman* decision. Indeed, nothing in the record can support the conclusion that the union acted in a "deliberate and severely hostile irrational manner," or that it engaged in "fraud, deceitful action or dishonest conduct." *Hoffman,* 658 F.2d at 522. In fact, plaintiffs uniformly admitted at their depositions that

they possessed no evidence of any hostility by the union toward any plaintiff.[2]

To sum up, plaintiffs failed to present any evidence of intentional misconduct by the union. Because the showing of a breach of the union's duty of fair representation is a necessary condition to establishing plaintiffs' case against Budd, plaintiffs' claims against both defendants must fail. Accordingly, the decision of the district court is

AFFIRMED.

---

**2.** Nor do the plaintiffs claim that Rodgers failed altogether to represent their claims. This would be a different case in the event of such a claim because this circuit has stated that it will review an arbitral action that instead of interpreting a contract, is tantamount to revising it. *See Camacho, supra,* 786 F.2d at 244 ("The grievance and arbitration machinery is designed to place review ... in specialized tribunals. Review of arbitral awards is close to nonexistent so long as the arbitrator interprets (as opposed to revises the contract)."). Where a contract guarantees representation, an egregious and flat out refusal to represent has the effect of cancelling the contractual guarantee. *Hoffman* does not (and could not consistent with congressional policy) bar review of an egregious failure to represent contractual rights. Such a failure is neither alleged here nor disclosed by the record.