Robert MATTER, Plaintiff,

v.

BETHLEHEM STEEL CORPORATION, Bethlehem Mines Corporation, BethEnergy Mines, Inc., Fawn Mining Corporation, C.L.I. Group of Companies and United Mine Workers of America, District 5, Defendants.

Civ. A. No. 91–426.

United States District Court, W.D. Pennsylvania.

Aug. 14, 1992.

Victor E. Vouga, Butler, Pa., for plaintiff.

Thomas E. Weiers, Jr., Pittsburgh, Pa., for defendants C.L.I. and Fawn Min.

Ronald G. Backer, Pittsburgh, Pa., for defendant Dist. 5–UMWA.

Robert F. Prorok, Pittsburgh, Pa., for defendants Bethlehem Steel, Bethlehem Mines and BethEnergy.

## MEMORANDUM ORDER

D. BROOKS SMITH, District Judge.

Plaintiff Robert Matter filed a complaint against his employers BethEnergy Mines, Inc. (BethEnergy)[1], Fawn Mining Corporation (Fawn), and C.L.I. Group of Companies ("CLI"),[2] and his collective bargaining representative, United Mine Workers of America, District 5 (Union), in the Court of Common Pleas of Butler County on January 30, 1991, alleging that the corporate defendants had violated the terms of the National Bituminous Coal Wage Agreement of 1988 (Agreement), and that the Union had breached its duty of good faith and fair dealing. Defendants CLI and Fawn removed the action to this Court pursuant to 28 U.S.C. § 1441 on March 8, 1991.[3]

■ CLI and Fawn assert, and plaintiff does not deny, that although plaintiff's complaint alleges common law breach of

contract and breach of the duty of good faith and fair dealing, because plaintiff seeks to hold the employer liable for breach of the collective bargaining agreement and the Union liable for breach of its duty of fair representation, this suit actually arises under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. *See Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Vadino v. A. Valey Engineers,* 903 F.2d 253, 260 (3d Cir.1990); *Childs v. Pennsylvania Federation Brotherhood of Maintenance Way Employees,* 831 F.2d 429, 433 (3d Cir.1987); *Parke v. Bethenergy Mines, Inc.,* 732 F.Supp. 587, 589 (W.D.Pa.1990). Because the cause of action arises under the laws of the United States this matter is properly before this Court. *See* 28 U.S.C. § 1441(b).

Before the Court at this time are the motions to dismiss filed by all defendants contending, *inter alia,* that this action is barred by the statute of limitations.[4]

### I.

Plaintiff is a member of a local which is part of the Union. He is employed by BethEnergy pursuant to the Agreement. Complaint, ¶ 10. The Union is plaintiff's collective bargaining representative. Plaintiff alleges that he and all defendants

---

1. Plaintiff also named as a defendant the corporate predecessor of BethEnergy, Bethlehem Mines Corporation. Bethlehem Mines Corporation ceased to exist on January 2, 1985 when it changed its corporate name to BethEnergy Mines, Inc. Plaintiff has agreed to dismiss Bethlehem Mines Corporation and Bethlehem Steel Corporation from this action. Plaintiff's Brief in Opposition, 7–8.

2. Plaintiff's complaint does not specify which of defendants BethEnergy, Fawn, or CLI is his employer. However, the parties agree that BethEnergy employed plaintiff at the time he filed his grievance. In his brief, plaintiff asserts, without contradiction, that the "C.L.I. Group of Companies, including Fawn Mining Corporation, was negotiating the purchase of said mine, the sale of which was completed on or about May 24, 1990." Plaintiff's Brief at 5. The overtime policy that allegedly violated the terms of the collective bargaining agreement apparently continued after the ownership of the mine changed hands.

3. Defendants Fawn and CLI received service of the complaint on February 11, 1992. Removal

was timely pursuant to 28 U.S.C. § 1446(b). Defendants Bethlehem Steel Corporation, Bethlehem Mines Corporation, BethEnergy Mines, Inc., and United Mine Workers of America, District 5 had not been served as of March 8, 1991. However, upon receiving service of the complaint, each defendant filed consent to the removal petition. *See generally, Lewis v. Rego Co.,* 757 F.2d 66, 68 (3d Cir.1985).

4. Defendants CLI and Fawn also argue that plaintiff's complaint must be dismissed for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). In support of their 12(b)(6) motion, CLI and Fawn argue that they were not signatories to the Agreement, that their purchase of the mine from signatory BethEnergy does not bind them to the Agreement, and that they cannot be liable under Section 301. When reviewing a motion for judgment on the pleadings, this Court is bound to accept the allegations of the complaint as true, and at this stage must accept plaintiff's allegation that CLI and Fawn were bound by the Agreement. *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.1991).

"were and continue to be governed by and subject to the [Agreement]." Complaint ¶ 18. The Agreement sets forth a comprehensive work schedule for all employees, establishing an eight (8) hour work day for all inside employees and providing that all inside employees must be paid an overtime rate of time and a half for work in excess of eight (8) hours a day or forty (40) hours a week. Complaint, ¶ 19(a); Agreement, Art. IV § (b)(1). The Agreement also establishes a seven (7) hour and fifteen (15) minute work day for outside employees, and requires that all outside workers receive overtime at the rate of time and a half for work in excess of seven (7) hours and fifteen (15) minutes a day and thirty-six and one quarter (36.25) hours per week. Complaint, ¶ 19(b); Agreement, Art. IV § (b)(2). The Agreement requires that employees be given an equal opportunity to work overtime. Complaint, ¶ 19(c)(d); Art. IV §§ (d)(3); (d)(7).

Plaintiff contends that defendant Beth-Energy "began giving certain inside employees, specifically, members of the loading crews, one and a half (1½) hours of overtime per day, five (5) days per week; the same opportunity for overtime was not afforded to plaintiffs." Complaint, ¶ 21. Plaintiff further avers that the new mine owner, defendant CLI, has continued this practice, Complaint, ¶ 22, and that the Union has not asked defendants to cease this activity. Complaint ¶ 23.

In January of 1990, plaintiff initiated a grievance in accordance with the comprehensive grievance procedure set forth in the Agreement by making an informal complaint to his foreman. Complaint, ¶ 25; *see* Agreement, Art. XXIII § (c)(1). Plaintiff's foreman, Anthony Guley, informed plaintiff that he would not take any action regarding the overtime policy and advised plaintiff to file a formal grievance pursuant to the grievance procedure. *Id.* Plaintiff proceeded to step 2 on January 3, 1990, by submitting a BCOA–UMWA Standard Grievance Form to the Mine Committee and mine management. Complaint, ¶ 24, ¶ 26; Agreement, Art. XXIII § (c)(2).

Step 2 requires the Mine Committee and mine management to consider a written grievance within 5 days of submission, and to complete the standard grievance form within 5 days of taking the matter under consideration. *Id.* Plaintiff was unsuccessful at step 2, and proceeded to step 3.

Step 3 requires the grievance to be referred to a Union representative and an employer representative, *Id.*, who must meet within 7 days to review the facts and pertinent contract provisions to arrive at a decision. Agreement Art. XXIII § (c)(3). If they cannot reach an agreement within 10 days of referral, the matter proceeds to step 4, which requires the matter to be referred to an arbitrator. Agreement, Art. XXIII § (c)(4).

Plaintiff alleges that the Union representative and employer representative did not arrive at a decision or refer the matter to an arbitrator within 10 days as required by Step 4. Instead, on March 12, 1990 they agreed that the grievance would be withdrawn. Complaint, ¶ 32. Plaintiff contends that the "grievance was withdrawn without a proper decision and without plaintiff's consent." Complaint, ¶ 33. Plaintiff filed his complaint in the Court of Common Pleas on January 30, 1991, approximately ten and one-half months after defendants disposed of his grievance.

## II.

■ It is well settled that hybrid Section 301 actions are subject to a six month statute of limitation. *See DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Vadino,* 903 F.2d at 260; *Childs,* 831 F.2d at 433. What is less settled is the date when such a cause of action accrues. Defendants contend that plaintiff's cause of action accrued on March 12, 1990, when the Union and management representatives agreed that plaintiff's grievance would be withdrawn. Plaintiff, on the other hand, contends that this event was insufficient to start the limitations period because it was not a final arbitration decision required by the Agreement.

■ The Courts of Appeals have consistently held that a hybrid Section 301 action accrues "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Vadino*, 903 F.2d at 260 (citations omitted); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir.1986); *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 304 (7th Cir.1983), *cert. denied*, 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984). In this Circuit, "the limitations period commences when the plaintiff receives notice that the Union will proceed no further with the grievance." *Vadino*, 903 F.2d at 260 (citations omitted); *accord Hersh*, 789 F.2d at 232. Moreover, Third Circuit precedent does not require that the plaintiff receive explicit notice that the Union will not proceed. Instead, "the statute of limitations begins to run when 'the futility of further union appeals becomes apparent or should have become apparent.'" *Vadino*, 903 F.2d at 260, *quoting Scott v. Local 863, Int'l Brotherhood of Teamsters*, 725 F.2d 226, 229 (3d Cir. 1984). Contrary to plaintiff's position, a final arbitration decision is not always necessary to begin the limitations period.

■ In the instant case, plaintiff's union representative, Ken Horciak, agreed that plaintiff's grievance would be withdrawn on March 12, 1990. Complaint, ¶ 32. Although this was not the final decision of an arbitrator, it was a final action inasmuch as the grievance procedure "was exhausted [and had] brok[en] down to the employee's disadvantage." *Childs*, 831 F.2d at 434 (citation omitted). Moreover, this action clearly manifested the Union's decision to "proceed no further with [plaintiff's] grievance." *Vadino*, 903 F.2d at 260.

Plaintiff argues that because the Union never notified him that his grievance was being withdrawn, the March 12, 1990 decision could not trigger the limitations period. Plaintiff's Brief at 5. However, plaintiff did not allege in his complaint that the Union failed to notify him. The mere recitation of this information in a brief would not be sufficient because statements in briefs do not constitute evidence. *See*

*Tunnell v. Wiley*, 514 F.2d 971, 975 n. 5 (3d Cir.1975).

■ The more fundamental problem with plaintiff's argument that the statute did not begin to run because the Union did not notify plaintiff of the March 12, 1990 decision is that precedent in this Circuit does not require the plaintiff to receive actual notice that the Union will not pursue the grievance. Instead, the statute of limitations begins to run when the employee "should have reasonably known that further appeals to the union would be futile." *Vadino*, 903 F.2d 261 n. 11.

■ The Agreement upon which plaintiff relies sets forth a comprehensive grievance procedure with brief time limits. Once plaintiff's grievance was taken to Step 3, the Union and employer representatives had 10 calendar days to refer the matter to an arbitrator. Agreement, Art. XXIII § (c)(4). The agreement requires the arbitrator to hold a hearing "no later than 15 days after referral to him." *Id.* When plaintiff did not receive notice of the referral, he should have become aware that the Union was not pursuing his grievance. Similarly, the continuation of the allegedly improper overtime policy should have alerted plaintiff that the Union was no longer acting on his behalf. "At some point prior to the six month statutory period, [plaintiff] should have realized that the Union was taking no action on his behalf." *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 304 (7th Cir.1983). Given the short time limits set forth in the grievance procedure, plaintiff "cannot be allowed to sit back and claim a lack of notice in light of circumstances such as these." *Metz*, 715 F.2d at 304.

The violations alleged by plaintiff were the employer's adherence to an improper overtime policy and the Union's failure to enforce the contractual overtime policy. Plaintiff was necessarily aware that his employer continued to adhere to the improper overtime policy and therefore should have been aware, through the exercise of reasonable diligence, that the Union had failed to prevail or had ceased to represent his interest. Even if plaintiff never

received actual notice of the March 12, 1990 decision, plaintiff should have become aware that the Union would take no further action within a reasonable period of time after March 12, 1990.

■ Even accepting the contention in plaintiff's brief that he never received notice of the March 12, 1990 decision,[5] plaintiff should have realized that the time limits set forth in the Agreement had expired and should then have made appropriate inquiries. To find the Complaint to have been timely filed, I would have to conclude that it would take a reasonably diligent employee more than four months to discover that the Union would take no further action on his grievance. This is contrary to the statutory policy of prompt resolution of labor disputes. *See Metz*, 715 F.2d at 304.

### III.

■ In light of the foregoing, defendants' motions to dismiss could be granted without further discussion. However, despite the plaintiff's failure to discuss the issue in the briefs, plaintiff alleges at Complaint, ¶ 53, that "[d]efendants have *consistently* refused to address plaintiff's grievance ... ." (emphasis added), which could be construed as alleging a continuing violation. *See Brenner v. Local 514, United Brotherhood of Carpenters*, 927 F.2d 1283, 1296 (3d Cir.1991). It is unclear from the plaintiff's complaint whether use of the word "consistently" means that plaintiff made repeated demands upon the union for assistance in grieving the allegedly unfair allocation of overtime opportunities. If it does, then plaintiff states the kind of factual pattern the Seventh Circuit found sufficient to allege a continuing violation in *Lewis v. Local 100 Laborers' International Union*, 750 F.2d 1368, 1378 (7th Cir. 1984), which *Brenner* cited with approval. 927 F.2d at 1296.

If Matter did not make repeated demands upon the Union, however, then he asserts nothing more than "continued union inactivity after an initial failure to respond to a grievance," *Adams v. Budd Co.*, 846 F.2d 428, 431 (7th Cir.1988), *citing Metz v. Tootsie Roll Industries, Inc., supra*, 715 F.2d at 305–06, which the circuits uniformly hold not to be a continuing violation. *See e.g. Flanigan v. IBT, Truck Drivers Local 671*, 942 F.2d 824, 827–28 (2d Cir.1991).

In the interests of judicial economy, therefore, within 10 days plaintiff shall either: (1) file an amended complaint alleging that plaintiff did make a repeated demand upon the Union for assistance within 6 months of January 30, 1991; or (2) withdraw the complaint. If no amended complaint is filed, plaintiff's complaint will be dismissed without further discussion.

Pursuant to the agreement of plaintiff, judgment is entered in favor of Bethlehem Steel Corporation and Bethlehem Mines Corporation, and the complaint is dismissed with prejudice as to those defendants.

---

**5.** Of course, plaintiff must have received actual notice at some point before January 30, 1991.

*See* Complaint, ¶ 32.