Jerry M. SPALDING, Plaintiff,

v.

LOCAL UNION NO. 4714, COMMUNICA-
TION WORKERS OF AMERICA, Com-
munication Workers of America, and
Indiana Bell Telephone Company, Inc.,
Defendants.

No. IP 89–141–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Jan. 16, 1991.

James B. Mitchell, Indianapolis, Ind., for
plaintiff.

Edward J. Fillenwarth, Jr., Fillenwarth
Dennerline Groth & Baird, Indianapolis,
Ind., for Union defendants.

Henry C. Ryder, Kenneth J. Yerkes,
Barnes & Thornburg, Indianapolis, Ind., for
Indiana Bell Telephone Co., Inc.

BARKER, District Judge.

Before the court are Defendants' Local
Union No. 4714, Communication Workers
of America ("Local Union"); Communica-
tion Workers of America ("CWA"); and
Indiana Bell Telephone Company, Inc.
("Indiana Bell") motions for summary judg-
ment pursuant to Rule 56(e) of the Federal
Rules of Civil Procedure. The issues are
whether Plaintiff, Jerry Spalding ("Spald-
ing"), filed his hybrid § 301/duty of fair
representation claim within the 6 month
statute of limitations period applicable to
§ 301 claims, *DelCostello v. International
Bhd. of Teamsters*, 462 U.S. 151, 103 S.Ct.
2281, 76 L.Ed.2d 476 (1983), and whether
the defendant unions breached their duty
of fair representation. For the reasons set
forth below, defendants' motions for sum-
mary judgment are GRANTED.

MEMORANDUM

I. Background

A. *Union History*

Mr. Spalding worked for Indiana Bell
from June, 1978 to November 24, 1987.

While an employee at Indiana Bell, Spalding became a member of both the CWA and Local Union No. 4714. At the time of Spalding's discharge, Indiana Bell and the CWA were signatories to a collective bargaining agreement ("CBA") which set the terms and conditions of employment for union members. The CBA contained a three-step grievance procedure which could lead to binding arbitration between the CWA and Indiana Bell.[1]

In December of 1982, Spalding transferred out of his original position in directory assistance and into the mail room, which is the position he held when his employment was terminated. While in the mail room, Spalding became active in the Local Union. Shortly after his arrival in the mail room, Spalding was appointed a Union Steward. Then, during a 1983 strike, he was also appointed a Union Prosecutor. The next year, in 1984, Spalding was elected Chief Steward.[2] He held that position until the summer of 1987, when he ran for Local President. In that election, he was overwhelmingly defeated by the incumbent, Bea Sigler. Spalding and another unsuccessful candidate protested the results of the election to the Local Executive Board, which affirmed the results. Prior to the Board's ultimate decision, however, Spalding was terminated by Indiana Bell.

### B. *Employment History*

Spalding's employment history with Indiana Bell was far from exemplary. He received several counselings, written disciplines, and suspensions during his nine year tenure with Indiana Bell.

In December, 1979, in his position as an operator in directory assistance, Spalding was suspended for two days for pushing his supervisor. This suspension was the subject of a grievance proceeding, which was ultimately settled to his satisfaction.

Ten months after his transfer to the mail room and after his appointment as a Steward, Spalding, in October, 1983, was formally counseled about being in an area where he should not have been and making a telephone call from the lounge area.

During 1984, 1985, and most of 1986, while not the subject of any formal disciplinary action, Spalding admits to being warned about his conduct.[3] These warnings resulted from Spalding's disruptive and bothersome behavior when entering work areas to deliver mail or post notices on the union bulletin boards. This disruptive conduct led to a meeting in October or November 1986, between Spalding, Indiana Bell and Local Union representatives. At the meeting, Spalding was advised not to bother other employees. In addition, on December 31, 1986, Spalding's supervisor further advised him not to disrupt other work areas.

A little over one week after this directive, a second meeting was held to discuss Spalding's disruptive behavior. In that meeting, on January 8, 1987, Spalding agreed to contact supervisors prior to talking to employees in other areas and before posting materials on the union bulletin boards. In addition, he agreed not to post union materials during nonworking hours.

In March, 1987, Spalding was suspended for being in the Administrative Support Center ("ASC") during off hours. The ASC is a "restricted area" and Spalding was there before employees normally reported to work. Moreover, he did not request supervisory authorization before entering the area. Spalding grieved his suspension, but the CWA decided not to arbitrate the dispute.

---

1. The Local Union, because it was not a party to the CBA, could not independently arbitrate disputes with Indiana Bell. Therefore, to arbitrate a grievance, the Local Union had to petition the CWA, which determined whether or not to arbitrate.

2. As Steward and later as Chief Steward, Spalding represented employees during their grievance proceedings. However, none of these grievances were ever arbitrated by the CWA.

3. As he stated in his deposition, "I was called on the carpet several times." (Deposition p. 209).

Although Spalding's deposition was returned unsigned, it may be given the same force and effect as though it had been signed. Fed.R. Civ.P. 30(e).

During his suspension meeting, Spalding was reminded that he was not to be in work areas during off-hours and was to request supervisory permission before entering unauthorized work areas. In addition, he was warned that further violations could lead to severe disciplinary action. However, less than two weeks later, on March 19, 1987, Spalding received another warning about his presence in an unauthorized work area.

On November 11, 1987, Spalding met with Jerry Wright, the head of security for Indiana Bell. During this meeting, Spalding was questioned about his personal use of the Indiana Bell postage meter.[4] Spalding initially told investigators that he had only used the postage meter for one package. However, he later admitted to running ten to fifteen packages through the meter. No discipline directly resulted from this meeting.

Two days later, on November 13, 1987, Spalding was "suspended pending further investigation" for being on company property during nonworking hours on three occasions in early November, 1987. Eleven days later, Spalding was terminated for 1) violating Company rules and postal regulations by misusing Indiana Bell's postage meter; 2) misusing Company facilities and services of other employees for an unauthorized purpose; and 3) ignoring earlier warnings about being in areas without prior supervisory permission.

Spalding filed a grievance with the Local Union alleging that Indiana Bell breached the CBA by discharging him. The grievance was denied by Indiana Bell at each of the three steps of the grievance procedure. Spalding did not attend any of these meetings, although he was invited to attend the third.

Following the final meeting, held on March 22, 1988, the Local Union recommended to the CWA that it should take the grievance to arbitration. On June 27, 1988, Spalding was notified by the Local Union President, Bea Sigler, that the CWA had decided not to arbitrate his grievance. During this conversation, Spalding was informed that the CWA's decision was final and that the Local Union could not arbitrate on its own. However, Ms. Sigler informed Spalding that she was going to ask the CWA to reconsider its decision.

The CWA informed Spalding on July 18, 1988 that it would reconsider his grievance. The letter informing Spalding of the CWA's decision to reconsider also stated that the CWA was reviewing audio tapes of Spalding's hearing before the Indiana Department of Employment and Training appeals referee. (Exhibit 21). Nevertheless, on August 5, 1988, the CWA sent a letter to Ms. Sigler stating that its original decision not to arbitrate would stand. Spalding testified that he received a copy of this letter on August 7, 1988.[5] On February 9, 1989, Spalding filed suit against Indiana Bell and the Unions for breaching the CBA and for breaching its duty of fair representation.[6]

## II. Analysis

The defendants assert two grounds for summary judgment: (1) that the evidence fails to establish a breach of the union's duty of fair representation, and (2) that the plaintiff's claim is barred by the applicable statute of limitations. Since the latter ground is dispositive, and since the Court has determined below that plaintiff's suit is time-barred, we need not examine the merits of the first ground.

The standards governing a motion for summary judgment are well established. Under Rule 56(c) of the Federal Rules of

4. Spalding signed a document, prior to working in the mail room, that indicated he could be terminated for personal use of the postage meter.

5. Because August 7, 1988 was a Sunday and no mail was delivered, the Court will assume that Mr. Spalding received the letter on August 8, 1988.

6. Specifically, Spalding alleges that the Unions breached their duty of fair representation and that Indiana Bell breached the CBA in violation of § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

Civil Procedure, summary judgment is appropriate only where the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of establishing the lack of a genuine issue of material fact. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984). The nonmoving party's reasonable allegations are to be accepted as true. *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1218–19 (7th Cir.1984). However, when a properly supported motion is made, the nonmoving party "may not rest upon mere allegations ... of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). When considering a motion for summary judgment, the court must view the inferences drawn from the evidence presented in the light most favorable to the nonmoving party. *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985).

■ Section 301 of the LMRA, 29 U.S.C. § 185(a), establishes a federal forum to resolve disputes for violation of contracts between an employer and a labor organization. The LMRA contains no statute of limitations for § 301 claims. The Supreme Court, however, held that the six-month statute of limitations set forth in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), applies to "hybrid § 301/duty of fair representation" claims like the present case. *DelCostello*, 462 U.S. 151, 154, 103 S.Ct. 2281, 2285, 76 L.Ed.2d 476 (1983); *Adams v. Budd Co.*, 846 F.2d 428, 431 (7th Cir.1988).

■ None of the parties dispute that the six month statute of limitations period is applicable. Rather, the parties disagree as to when the limitations period began to run. It is settled law in this Circuit that the six-month limitations period begins to run "from the time a final decision on the employee's grievance has been made or from the time the employee discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance." *Richards v. Local 134, Int'l Bhd. of Elec. Workers*, 790 F.2d 633, 636–37 (7th Cir. 1986); *Metz v. Tootsie Roll Indus., Inc.*, 715 F.2d 299, 304 (7th Cir.1983); *Adams v. Budd Co.*, 846 F.2d 428, 431. This case falls within the "from the time a final decision on the employee's grievance has been made" test.[7] The issue, therefore, is to determine when the CWA's decision not to arbitrate became final.

The defendants argue that the period commenced on June 27, 1988 when the CWA initially refused to arbitrate Spalding's grievance. In the alternative, the defendants argue that the time began on August 7, 1988 when Spalding received notice that the CWA had refused to reconsider.[8]

On the other hand, Mr. Spalding argues that between June 27, 1988 and August 15, 1988, he was trying to exhaust his intra-union remedies. *See Frandsen v. Brotherhood of Ry., Airline & S.S. Clerks*, 782 F.2d 674 (7th Cir.1986). Spalding asserts that the June 27, 1988 denial was immaterial because the CWA agreed to reconsider its decision in light of the additional evidence. Moreover, Spalding argues that August 7, 1988 notification should not be the date because, on August 15, 1988, he

---

7. Clearly the refusal of a union to proceed further with arbitration on behalf of an aggrieved employee amounts to a final and binding decision which terminates the grievance proceedings and begins the limitations period. *Metz v. Tootsie Roll*, 715 F.2d at 303 *quoting Hall v. Printing and Graphic Arts Union, Local No. 3*, 696 F.2d 494 (7th Cir.1982).

8. In his deposition (p. 74), Spalding was questioned specifically on when he received the rejection letter from the CWA.

Q. Now, Union Exhibit 22 is a letter from the district office. Have you seen that before?

A. Yes.
Q. Did you receive that in the mail?
A. Yes. This was sent regular postage.
Q. Do you know on about what date you received it?
A. I really couldn't tell you. It was sometime in August. The envelope that it came in should probably be in there with the canceled postage stamp—or the postage meter mark, I guess. I want to say that I received it on or around the 7th, okay.

received a letter from the Local Union's President Bea Sigler stating that the reconsideration of his grievance had been denied. Since Spalding did not receive final notice until August 15, 1988, he argues, his lawsuit is timely. "Not until receipt of this letter after August 15, 1988 did Mr. Spalding have a final decision, not subject to further reconsideration, in which to then consider filing a lawsuit." *Plaintiff's Memorandum Opposing Motion for Summary Judgment* p. 2.

This court finds that whether or not the CWA's decision to reconsider its refusal to arbitrate Spalding's grievance somehow tolls the running of the six-month limitations period, the complaint filed on February 9, 1989 was filed after the six-month statute of limitations period.

Assuming that the June 27, 1988 decision was the trigger date, the complaint is clearly time barred—February is more than six months after late June. Upon receipt of the June 27, 1988 decision, Spalding knew that the CWA's determination not to arbitrate was final in the sense that the CWA did not have to reconsider its decision and that the Local Union could not independently arbitrate the grievance. Moreover, in June, Spalding knew or could have discovered all the facts he needed to know to proceed with his hybrid § 301/duty of fair representation action. *See Bonds v. Coca–Cola Co.*, 806 F.2d 1324, 1326 (7th Cir. 1986); *Steffens v. Brotherhood of Ry.*, 797 F.2d 442, 446 (7th Cir.1986); *Metz v. Tootsie Roll*, 715 F.2d 299, 304.

▇ "Informal"[9] requests to reconsider should not toll the statute of limitations. *Cf. Sosbe v. Delco Electronics Div. of G.M.C.*, 830 F.2d 83, 87 (7th Cir.1987); *Dozier v. Trans World Airlines, Inc.*, 760 F.2d 849, 852 (7th Cir.1985). A contrary result would fly in the face of the strong federal policy favoring the prompt resolution of labor disputes. *See, e.g., DelCostello*, 462 U.S. at 162, 103 S.Ct. at 2289, 76 L.Ed.2d 476 (1983). An employer could no longer rely on the grievance and arbitration process as a way to privately resolve disputes. Instead, claims would be left unresolved indefinitely and would be subject to the problems that statute of limitations were intended to eliminate.[10]

While some courts might be persuaded that the grievance proceedings terminated and that a final determination was made on June 27, 1988, when the CWA refused to arbitrate Spalding's grievance, *see, e.g., Anderson v. Amalgamated Transit Union Local 1150*, 626 F.Supp. 378, 379 (N.D.Ill. 1986) (Union's January 14, 1985 notice to Anderson, stating its turndown of any further pursuit of his grievance, clearly started the six-month clock ticking, even though Anderson later wrote the Union's President seeking to get reconsideration of the adverse decision); *Chambers v. United Steelworkers of America*, 589 F.Supp. 39 (N.D. Ohio 1984), this court is troubled by such a conclusion in light of the CWA's rather prompt decision to reconsider by an examination of additional evidence. Contrary to the union's unequivocal correspondences in *Sosbe* and *Dozier*, the CWA's June notification to Spalding was entitled to some reconsideration. *See Sosbe*, 830 F.2d 83, 88; *Dozier*, 760 F.2d at 851. Therefore, the court will consider the June date as not controlling for purposes of computing the statute of limitations here.

The court notes, however, that the final, binding decision by the CWA not to arbitrate Mr. Spalding's grievance was made on or before August 5, 1988—the date on the letter to Ms. Sigler notifying her that the CWA's original decision would stand. Therefore, that date starts the running of the six-month limitations period. *See Bonds v. Coca–Cola Co.*, 806 F.2d 1324, 1326 ("the date of the arbitrator's decision is the critical one for purposes of *DelCostello* ..."); *Adams v. Budd Co.*, 846 F.2d 428, 431; *Richards v. Local 134, Int'l Bhd. of Elec. Workers*, 790 F.2d 633, 636–37 (limitation period begins to run "from the time a final decision on the employee's grievance has been made ..."); *Hall v. Printing & Graphics*, 696 F.2d 494, 499 ("since her claim was not commenced until approximately 10 months after the Local's decision not to arbitrate" it is untimely);

---

9. The request to reconsider was "informal" in the sense that it was not mandated by the CBA or standard union practice.

10. Continually allowing a union to informally request reconsideration of a final determination could allow a union to independently extend the statute of limitations well beyond six months.

*DelCostello*, 462 U.S. 151, 172, 103 S.Ct. 2281, 2294–95, 76 L.Ed.2d 476 ("Depending on when the joint *committee's decision is thought to have been rendered*, the suit was filed some seven or eight months afterwards." (emphasis supplied)); *Ernst v. Indiana Bell Telephone Co., Inc.*, 717 F.2d 1036, 1038 (7th Cir.1983) (action filed eleven months after the end of arbitration is untimely). Since the CWA's decision was made on August 5, 1988, the limitations period expired on February 5, 1989. Consequently, Spalding's complaint filed on February 9, 1989 is time-barred.

Moreover, Spalding's complaint is time-barred even if the period does not begin until after his receipt of the notice of the CWA's decision on August 8, 1988. As a preliminary matter, Spalding's argument that he was not on notice of the CWA's decision until August 15, 1988 is specious. *See Howard v. Lockheed–Georgia Co.*, 742 F.2d 612, 614 (11th Cir.1984).[11] The letter from the CWA addressed to Bea Sigler rejecting reconsideration of Spalding's grievance, dated August 5, 1988, was "copied" to Mr. Spalding. This is the letter (Exhibit 22) that Spalding testified to receiving on August 7, 1988. However, recall that since August 7, 1988 was a Sunday, the court is assuming that Spalding was on notice that the CWA had rejected his grievance on Monday, August 8. Therefore, because Spalding's complaint was filed on February 9, 1989, a date exceeding six months, it is time-barred. *Cf. Adams v. Budd Co.*, 846 F.2d 428, 431. ("[I]t is clear that plaintiffs knew or should have known as early as April 10, 1984—the date of Thomas Rodgers' letter stating that he had investigated plaintiffs' complaints—that the union intended to take no further action on their grievance request. Following receipt of this letter, plaintiffs were required to file their complaint regarding Budd's denial of their 1979–1984 applications no later than October 10, 1984.")

Because the court finds that Spalding's complaint is time-barred, there is no need to determine whether the Unions breached their duties of fair representation.

### III. Conclusion

For all the foregoing reasons, the motions for summary judgment are GRANTED and the complaint is DISMISSED for lack of subject matter jurisdiction.

It is so ORDERED.

### JUDGMENT

In accordance with the court's accompanying entry determining that plaintiff's hybrid § 301/duty of fair representation claim was filed after the six month statute of limitations period, JUDGMENT is hereby ENTERED in favor of the defendants and the action is hereby DISMISSED with prejudice, with each of the parties to bear its own costs.

It is so ORDERED.

---

11. In *Howard,* the court determined when an employee's hybrid § 301 cause of action accrued. "The fact that plaintiff did not receive formal written notice of the Union's September 22 action until the Union belatedly wrote plaintiff on October 28 is not determinative. Defendants had no contractual duty to provide formal written notice, and even if the Union were negligent in not providing formal notice sooner, the failure to give that notice would not mean that the plaintiff did not have the requisite knowledge. The plaintiff was orally informed of his grievance's withdrawal no later than October 16 so the date he received formal written notice would not control." *Id.* (citations omitted).