939 F.2d 505
 138 L.R.R.M. (BNA) 2424, 119 Lab.Cas. P 10,922
 James WILLIAMS, Plaintiff-Appellant,
v.
ROMANO BROTHERS BEVERAGE COMPANY, an Illinois Corporation,
also known as Morand Brothers Beverage Company, and Liquor &
Allied Workers' Union Local No. 3 of The Distillery,
Rectifying, Wine & Allied Workers International Union,
AFL-CIO, Defendants-Appellees.
 No. 91-1360.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 16, 1991.
Decided Aug. 12, 1991.
 
 James A. Romanyak, Gregory A. Stayart (argued), Romanyak & Associates, Chicago, Ill., for plaintiff-appellant.
 James R. Beyer, Carl E. Johnson, Stephen L. Golan, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant-appellee Romano Bros. Beverage Co.
 Matthew F. Kennelly (argued), Margaret L. Paris, James R. Streicker, Cotsirilos, Stephenson, Tighe & Streicker, Chicago, Ill., for defendant-appellee Liquor & Allied Workers' Union.
 Before CUMMINGS, CUDAHY and RIPPLE, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 James Williams brought suit against his former employer, Romano Brothers Beverage Company (Romano), and his union, Liquor and Allied Workers Local No. 3 (the Union), alleging that the Union breached its duty of fair representation and that Romano breached the collective bargaining agreement. The district court granted both defendants' motions to dismiss for failure to state a claim. For the following reasons, we affirm the judgment of the district court.
 
 
 2
 * BACKGROUND
 
 
 3
 Mr. Williams worked as a warehouseman for Romano from 1979 until June of 1985, when he suffered a back injury while at work. Over six months later, Dr. Alan Hirsch cleared Mr. Williams to return to work with no restrictions. Romano then reinstated Mr. Williams. Mr. Williams re-injured his back in June of 1986. He attempted to return to work two years later. In November of 1988, he presented Romano with a return to work slip from Dr. Ronald P. Pawl that stated that Mr. Williams could not lift medium to heavy objects and could not repeatedly bend, lift, or twist. Romano refused to reinstate Mr. Williams because no job with these limitations existed in the warehouse.
 
 
 4
 On December 13, 1988, Mr. Williams obtained a disability certificate from Dr. Hirsch indicating that he could work four hours per day but could not lift more than 75 pounds. Romano continued to refuse to reinstate Mr. Williams, this time because no part-time or light-duty jobs existed in the warehouse. Mr. Williams then returned with still another disability certificate on January 13, 1989. This certificate, signed for Dr. Hirsch by his nurse, stated that Mr. Williams could return to work with no restrictions. Romano again refused to reinstate Mr. Williams because the certificate did not explain why the doctor had changed his opinion about Mr. Williams' physical condition. Subsequently, Romano received a letter from Dr. Hirsch stating that the basis for his present medical opinion was Mr. Williams' own assessment that he was physically able to return to work. Yet in either March or April of 1989, Mr. Williams settled his pending worker's compensation claims and agreed in the settlement that he was 45% disabled.
 
 
 5
 Mr. Williams accepted employment as a warehouse dock worker with a different company in July of 1989. In Mr. Williams' opinion, this new job was more physically demanding than the work that he performed for Romano. Mr. Williams also indicated that he was able to work for a full day at his new job.
 
 
 6
 In August of 1989, Dr. Emanuel Dozier, at the request of Romano's worker's compensation insurance carrier, examined Mr. Williams on several occasions. Dr. Dozier also was taken through Romano's warehouse so that he could have a better understanding of the physical requirements of Mr. Williams' work. Dr. Dozier determined that Mr. Williams was not fit to resume his work in the Romano warehouse. Thus, Romano refused to reinstate Mr. Williams. Mr. Williams filed a grievance, which the Union took to arbitration.
 
 
 7
 The arbitrator reviewed the collective bargaining agreement and the various medical reports and decided against Mr. Williams. Although the arbitrator found that the collective bargaining agreement reserved to Romano the right to determine employee fitness and ability to work, the arbitrator explicitly stated that Romano must exercise this right in a reasonable and justifiable manner. Given the medical opinions of Mr. Williams' physical fitness and Mr. Williams' agreement in the settlement of his worker's compensation claim that he was 45% disabled, the arbitrator found that Romano's decision not to reinstate Mr. Williams was reasonable and justifiable.
 
 
 8
 Mr. Williams then filed in the district court a claim under section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, alleging that Romano breached the collective bargaining agreement and that the Union breached its duty of fair representation. These charges stemmed from Mr. Williams' allegation that the Union's officers, as well as the attorney who represented Mr. Williams at the arbitration proceeding, were involved in Windy City Labor Service, a business that provided temporary, non-union workers to Romano. Mr. Williams argues that these actions violated the collective bargaining agreement between Romano and the Union, and that the Union's participation in this affair violated its duty of fair representation. Because the Union's alleged involvement in Windy City was not disclosed until after the arbitration had been completed, Mr. Williams contends that he was deprived of the opportunity to secure his own attorney and to disclose the Union's conflict of interest to the arbitrator.
 
 
 9
 The district court granted the motions to dismiss made by Romano and the Union. The court determined that Mr. Williams had not indicated how the Union's conflict of interest had affected his arbitration. "Mr. Williams' complaint cannot be construed to allege that the arbitrator's award was tainted, since the complaint and its attachments demonstrated that the arbitrator's award was based on relevant and appropriate evidence." Mem. op. at 3. The court thus found Mr. Williams' complaint "doomed to failure." Id.
 
 II
 ANALYSIS
 A. Applicable Standards
 
 10
 The applicable procedural standard is a familiar one. In reviewing the dismissal of a complaint for failure to state a claim upon which relief can be granted, our review is de novo. See, e.g., Villegas v. Princeton Farms, Inc., 893 F.2d 919, 924 (7th Cir.1990). We must determine whether, taking all inferences in favor of the non-moving party, the facts alleged in the complaint would permit recovery. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957); Webster v. New Lenox School Dist. No. 122, 917 F.2d 1004, 1005 (7th Cir.1990).
 
 
 11
 Here, the plaintiff's complaint seeks to overturn an arbitral award. "Judicial review of a labor arbitration award is very limited." Walters Sheet Metal Corp. v. Sheet Metal Workers Local No. 18, 910 F.2d 1565, 1566 (7th Cir.1990);[1] we uphold such awards provided that the arbitrator attempted to interpret the collective bargaining agreement rather than to apply his own ideas of right and wrong. See Miller Brewing Co. v. Brewery Workers Local Union, 739 F.2d 1159, 1162 (7th Cir.1984).
 
 
 12
 The substantive standards are also well settled. Mr. Williams attacks the arbitral award on the ground that the Union breached its duty of fair representation. In order to establish such a claim, a plaintiff must, under the law of this circuit,[2]
 
 
 13
 allege facts from which the Court can deduce that the union, in taking some action adverse to the employees, engaged in wrongful behavior.... Thus, employees must allege that the union intended to deprive them of their contract rights, or that it discriminated against them for forbidden reasons, or that it sabotaged a possibly meritorious grievance because of personal enmity, or that it intentionally undermined a grievance on the basis of political allegiances within the union, or that it otherwise intentionally caused harm to an employee through fraud, deceitful action or dishonest conduct. The allegation must focus on motive rather than result; employees must allege not only what the union did but how or why.
 
 
 14
 Martin v. Youngstown Sheet & Tube Co., 911 F.2d 1239, 1248 (7th Cir.1990); see also Thomas v. United Parcel Serv., Inc., 890 F.2d 909, 923 (7th Cir.1989) ("In this Circuit, the prevailing standard requires the employee to prove that the union conduct was 'intentional, invidious, and directed at the employee.' ") (quoting Hoffman v. Lonza, Inc., 658 F.2d 519, 521 (7th Cir.1981)).
 
 
 15
 Additionally, the plaintiff must establish that the Union's breach actually affected the outcome of the arbitration. As the Supreme Court noted in Hines v. Anchor Motor Freight, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976):
 
 
 16
 [W]here the union actually utilizes the grievance and arbitration procedures on behalf of the employee, the focus is no longer on the reasons for the union's failure to act but on whether, contrary to the arbitrator's decision, the employer breached the contract and whether there is a substantial reason to believe that a union breach of duty contributed to the erroneous outcome of the contractual proceedings.
 
 
 17
 Id. at 568, 96 S.Ct. at 1058 (emphasis supplied); see also Camacho v. Ritz-Carlton Water Tower, 786 F.2d 242, 246 (7th Cir.1986) (Hines "suggests that there must be a 'breach of duty by the union' that also caused injury in the sense that the employee would have been vindicated but for the union's dereliction."). Our colleagues in the Sixth Circuit have noted recently:
 
 
 18
 In the context of a hybrid 301 action, absent a finding that an erroneous arbitral decision has been reached, the inquiry into the union's failure to comply with its duty of fair representation becomes immaterial, and is not justiciable.
 
 
 19
 Thus, the ultimate issue with respect to the claim against the union in any hybrid 301 case is whether the alleged breach of the duty of fair representation "contributed to the arbitrator's making an erroneous decision."
 
 
 20
 White v. Anchor Motor Freight, Inc., 899 F.2d 555, 560 (6th Cir.1990) (quoting Wood v. International Bhd. of Teamsters, 807 F.2d 493, 500 (6th Cir.1986) (emphasis supplied by White court));[3] cf. Humphrey v. Moore, 375 U.S. 335, 350-51, 84 S.Ct. 363, 372-73, 11 L.Ed.2d 370 (1964) (the employees "have not yet suggested what they could have added to the facts or theory if they had been represented").
 
 B. Merits
 
 21
 Before us on appeal, Mr. Williams strenuously argues that the arbitration award must be set aside because of the business relationship between Romano and the union officers and its attorney. This relationship, he contends, constituted a conflict of interest that cannot be tolerated as a matter of federal labor policy and that so corrupted the arbitration process as to make the award null and void. He argues that "[t]here never was a true adversarial relationship between Local No. 3 and Romano Bros. at the arbitration." Appellant's Br. at 14. Romano's complicity in the union officials' side business constitutes, he continues, a repudiation of the collective bargaining agreement. Indeed, he submits that it is unnecessary to decide whether the suppressed evidence had a controlling effect on the result. "[W]hen clear conflicts of interest exist, they automatically taint the result of the agent's undertaking." Id. at 17.
 
 
 22
 We believe that the district court was correct in its conclusion that Mr. Williams has failed to allege any facts to support a finding that the alleged conflict of interest, had it been known to Mr. Williams or to the arbitrator, would have produced a different result. There is no claim that the arbitrator was biased[4] or that specific additional evidence, medical or otherwise, would have been presented to the arbitrator. Nor does he differ with the arbitrator's interpretation of the contract, an interpretation that recognized the company's right to make the judgment as to whether Mr. Williams could return to work.[5] There is no contention that a non-union Windy City worker replaced Mr. Williams.
 
 Conclusion
 
 23
 For the reasons stated above, the judgment of the district court is affirmed.
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 See also Camacho v. Ritz-Carlton Water Tower, 786 F.2d 242, 244 (7th Cir.) ("Review of arbitral awards is close to nonexistent so long as the arbitrator interprets (as opposed to revises) the contract; the parties have bargained for non-judicial decisions and are entitled to rely on the decisions they receive."), cert. denied, 477 U.S. 908, 106 S.Ct. 3282, 91 L.Ed.2d 571 (1986)
 
 
 [2]
 In Thomas v. United Parcel Service, Inc., 890 F.2d 909, 923 n. 5 (7th Cir.1989), this court contrasted the prevailing rule in this circuit and in the other circuits. Because this issue is not dispositive in this case and because of the doctrines of stare decisis and precedent, see id. at 924 (Bauer, C.J., concurring), we need not elaborate further on this point
 
 
 [3]
 See also Self v. Drivers, Chauffeurs, Warehousemen & Helpers Local Union No. 61, 620 F.2d 439, 443-44 (4th Cir.1980) (reversing judgment against union where there was no showing that plaintiff's grievances would have been sustained if the union had done its duty); Deboles v. Trans World Airlines, Inc., 552 F.2d 1005, 1018 (3d Cir.) (requiring direct nexus between breach of union's duty of fair representation and damage to employee), cert. denied, 434 U.S. 837, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977); Apperson v. Fleet Carrier Corp., 879 F.2d 1344, 1355 (6th Cir.1989) (same)
 
 
 [4]
 Thus, this case is easily distinguishable from those cases in which the arbitrator's neutrality was suspect. See, e.g., Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968); cf. Carr v. Pacific Maritime Ass'n, 904 F.2d 1313 (9th Cir.1990) (alleged bias of initial arbitrator cured by right to appeal to neutral arbitrator), cert. denied, --- U.S. ----, 111 S.Ct. 957, 112 L.Ed.2d 1045 (1991)
 
 
 [5]
 In his reply brief, Mr. Williams for the first time suggests a conspiracy between Romano and the Union not to invoke the contractual provision requiring disagreement between the company's and the employee's physician to be settled by a third physician. We do not entertain argument made for the first time in the reply brief. See, e.g., United States v. Rodriguez, 888 F.2d 519, 524 (7th Cir.1989). In any event, the arbitrator was well aware of that provision. Indeed, he cited it in his decision, yet held that, on the basis of the contract as a whole, Romano had the right to determine the physical fitness of its employees