**Michael A. VANCE, Plaintiff,**

v.

**LOBDELL–EMERY MANUFACTURING CO., Defendant.**

**Cause No. IP 95–373–C–B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 12, 1996.

Dale W. Arnett, Winchester, Indiana, for Plaintiff.

Herbert C. Snyder Jr., Barnes & Thornburg, Ft. Wayne, Indiana, for Defendant.

## ENTRY DISCUSSING GRANT OF SUMMARY JUDGMENT

BARKER, Chief Judge.

Plaintiff Michael A. Vance (Plaintiff) brought an action in Indiana state court to vacate a November 18, 1994 arbitration award upholding his discharge by Defendant Lobdell–Emery Manufacturing Co. (Lobdell–Emery). Defendant removed the case to this Court on grounds that Plaintiff's complaint involved a federal question, the arbitration having been conducted pursuant to the terms of a collective bargaining agreement (CBA). Plaintiff subsequently filed his current amended complaint in which he alleges that the arbitrator exceeded his powers, ignored the mandates of the CBA, and wrongly failed to consider the company's own breach of the CBA and its own failure to discipline another employee for actions similar to those for which Plaintiff was discharged. Plaintiff also has alleged that his union, which represented him at the arbitration, breached its duty of fair representation by not having had an attorney represent Plaintiff at the arbitration and by not having pursued Plaintiff's claim that the company violated the CBA. The Court presently has before it Lobdell–Emery's motion for summary judgment, which for the reasons stated below the Court grants.

## I. Factual background

Plaintiff was employed by Lobdell–Emery from October 6, 1975 through April 11, 1994, the date of his discharge. Early in his shift on Friday, April 8, 1994, Plaintiff was told that he would likely have to work overtime the next day. Plaintiff asked Roger Acree, a fellow employee and union committeeman, whether he could be required to work the overtime. Mr. Acree explained to Plaintiff that he would have to work overtime because he was the "low man," meaning that Plaintiff has accrued the lowest number of overtime hours.

Plaintiff then went to his immediate supervisor, Don Kiser, and the assistant plant manager, Larry Higgs, to discuss the question of whether he would be required to work overtime. Plaintiff admitted saying to Higgs, "Am I gonna have to slap somebody up side the head to get this straightened out?" Mr. Higgs, Mr. Kiser, and Plaintiff proceeded to Mr. Higgs' office to review the wording of the CBA. The three could not agree on a common interpretation of what the CBA required in regard to overtime assignments. Mr. Kiser then directed Plaintiff to return to work, while he and Mr. Higgs went out into the plant to discuss the issue with another union committeeman, Kirk Retz. At this time, Plaintiff went back to work.

Mr. Higgs, Mr. Kiser, and Mr. Retz were in the press room continuing the discussion of what the wording of the CBA required when Plaintiff reappeared. A large argument ensued. Plaintiff admitted asking Mr. Retz "just what the hell he thought was going on." Plaintiff also admitted that he

had shoved Mr. Retz two times and that Mr. Retz had not touched him. Mr. Higgs ordered Mr. Retz to return to work and Plaintiff to go to the plant's office. A brief meeting followed attended by Plaintiff, Mr. Higgs, Mr. Acree, and Personnel Manager Hans Luedike. Plaintiff was told that he would be suspended immediately.

Plaintiff returned to the plant the following Monday, April 11, and participated in a meeting lasting more than an hour with among others Mr. Higgs, Mr. Kiser, Mr. Luedike, and the president and vice president of the local union. At the end of the meeting, Plaintiff was discharged. Defendant stated that Plaintiff was discharged for having violated company rules which prohibit among other things: (1) fighting on company premises, (2) abusing, misusing, or deliberately destroying company property, (3) refusing to obey a reasonable order of a foreman or other supervisor, and (4) using abusive language against another employee or supervisor. The same day Plaintiff was discharged, the union filed a grievance protesting his discharge. The grievance procedures did not resolve the matter, and the union requested arbitration of the dispute on June 30, 1994.

In an award dated November 18, 1994 the arbitrator concluded that Lobdell–Emery had just cause to discharge Plaintiff the previous April after finding that Plaintiff had committed three of the four rule infractions with which he had been charged. Specifically, the arbitrator found that Plaintiff had abused other employers, had used abusive language against other employees, and had refused to obey a reasonable order of a foreman. *See* Nov. 18, 1994 Arbitration Award, Pl.'s Response Br., App. D, pp. 8–10.

## II. Discussion

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. Proc. 56(c). While the burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence

to support the nonmoving party's case", *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the nonmoving party responding to a properly made and supported summary judgment motion still must set forth facts showing that there is a genuine issue of material fact and that a reasonable jury could return a verdict in its favor. *See Wolf v. City of Fitchburg,* 870 F.2d 1327, 1329 (7th Cir.1989); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir. 1983), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Denials contained in the pleadings or bald allegations that an issue of fact exists is insufficient to raise a factual issue. *See Shacket v. Philko Aviation, Inc.,* 681 F.2d 506, 513 n. 8 (7th Cir.1982), *rev'd on other grounds,* 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983). "The moving party is 'entitled to a judgment as a matter of law' [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If doubts remain, however, as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment denied. *See Wolf,* 870 F.2d at 1330.

## III. Discussion

 Plaintiff has brought this action to vacate the award of the arbitration upholding his discharge. The Court has subject matter jurisdiction pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, which establishes a federal forum to resolve disputes for violations of collective bargaining agreements. *See Spalding v. Local 4714, Communication Wkrs. of America,* 756 F.Supp. 1151, 1154 (S.D.Ind.1991). The question of whether Plaintiff has standing to assert his claim is a somewhat distinct matter. *See Gutierrez v. United Foods, Inc.,* 11 F.3d 556, 558–59 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2164, 128 L.Ed.2d 887 (1994) (noting that the Supreme Court has established federal jurisdiction over suits brought by individual members to vindicate individual employee rights under a collective bargaining agreement but has yet to address

the separate question of an individual employee's standing to sue). The Seventh Circuit has held that, as a general rule, employees represented by a union are not parties to a union-company arbitration and that individual union members generally cannot challenge an arbitration award. *Martin v. Youngstown Sheet & Tube Co.*, 911 F.2d 1239, 1244 (7th Cir.1990), *abrogation on other grounds recognized by Ooley v. Schwitzer Div., Household Mfg., Inc.*, 961 F.2d 1293 (7th Cir.1992); *Shores v. Peabody Coal Co.*, 831 F.2d 1382, 1383–84 (7th Cir.1985). There are two exceptions to this rule. The first exception, which does not apply to this case, allows employees to defend against a suit seeking to vacate an arbitration award favorable to the union when the union chooses not to but otherwise acquiesces in the employees' action. *Martin*, 911 F.2d at 1244; *F.W. Woolworth Co. v. Miscellaneous Warehousemen's Union, Local No. 781*, 629 F.2d 1204 (7th Cir.1980), *cert. denied*, 451 U.S. 937, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981). The second exception allows employees to challenge or confirm a union-company arbitration award if the employees can state a claim against the union for breach of its duty of fair representation and the challenge or confirmation is integral to the case. *Martin*, 911 F.2d at 1244; *Anderson v. Norfolk & W. Ry. Co.*, 773 F.2d 880 (7th Cir.1985). *See also Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir.1994) (to state a section 301 claim against an employer for breach of a collective bargaining agreement, individual union member had to show both that the employer breached the agreement and that the union violated its duty of fair representation). As the Supreme Court observed in regard to this second exception, where a union representing an employee in a grievance or arbitration proceeding breaches its duty of fair representation "an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." *DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983). The Court continued:

Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective-bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. "Yet the two claims are inextricably interdependent. 'To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.' "

*Id.* at 164–65, 103 S.Ct. at 2290–91 (internal citations omitted). *See also Ooley v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293, 1297–98 (7th Cir.), *cert. denied*, 506 U.S. 872, 113 S.Ct. 208, 121 L.Ed.2d 148 (1992). Plaintiff contends (and Defendant concedes) that he has set forth a "hybrid" section 301/fair representation action because he has alleged "a breach of the collective bargaining agreement by Lobdell–Emery Manufacturing Co. and a breach of the duty of fair representation on behalf of the Union." *See* Pl.'s Response Br., pp. 1–2. The Court finds that Plaintiff has standing to pursue his claim.

### A. *Statute of limitations*

Before turning to the merits of Plaintiff's claim, we must settle one additional threshold matter: namely, whether Plaintiff's claim is time-barred. Defendant contends that it is; Plaintiff, that it is not. The Labor Management Relations Act does not contain a statute of limitations. Nevertheless, the Supreme Court has held that the six-month statute of limitations set forth in section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), applies to hybrid section 301/fair representation cases. *See DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983); *Martin v. Youngstown Sheet & Tube Co.*, 911 F.2d 1239, 1244 (7th Cir.1990); *Spalding v. Local 4714, Communication Wkrs. of America*, 756 F.Supp. 1151, 1154 (S.D.Ind.1991). Both parties agree that a six-month statute of limitations applies in this case; they differ as to when the period began to run. Defendant contends that because Plaintiff alleges the union

breached its duty of fair representation by not including in his grievance that Lobdell–Emery denied Plaintiff access to his committeeman, the limitations period began to run April 11, 1994, the date Plaintiff signed the union grievance which omitted that allegation. In support of its position, Defendant cites *Metz v. Tootsie Roll Industries, Inc.,* 715 F.2d 299, 304 (7th Cir.1983), for the general rule that a statute of limitations begins to run when a claimant discovers or should have discovered the act constituting the basis of the claim. Despite this general rule, we find applicable the more specific rule that, where an employee's fair representation claim against a union arises from the union's conduct in a grievance or arbitration procedure, the statute of limitations does not begin to run until a final decision on the grievance or arbitration has been made. As the court stated in *Bonds v. Coca–Cola Co.,* 806 F.2d 1324, 1326 (7th Cir.1986):

> We therefore held in *Freeman* [*v. Teamsters,* 746 F.2d 1316 (7th Cir.1984),] that the date of the arbitrator's decision is the critical one for purposes of *DelCostello,* because on that date the employees know *or could discover* that they have a potential claim against their union.

Defendant would circumvent the rule that the limitations period begins to run upon the issuance of a final decision by emphasizing the fact that Plaintiff bases his fair representation claim on an alleged breach of duty— the failure to pursue Plaintiff's breach of contract claim against Lobdell–Emery that occurred before the November 18, 1994 arbitration decision. Therefore, Defendant continues, Plaintiff arguably knew or should have known of the union's breach before a final decision was made in regard to his claim. While Defendant's chronology of events is most likely accurate, it does not provide a reason for departing from the rule set out in *Bonds.* Because the Seventh Circuit has held that a union has no duty to contest an arbitration decision in court, *see Freeman v. Teamsters,* 746 F.2d 1316, 1320 (7th Cir.1984), any breach of a union's duty of fair representation necessarily would have to occur before a final arbitration decision is reached. Furthermore, if we were to accept Defendant's contention that the limitations period began to run before the arbitrator made his award, then logically Plaintiff should have been able to bring suit against his union before the arbitration process was completed. This corollary clearly runs against the principle that an employee must exhaust any grievance or arbitration remedy in a collective-bargaining agreement before bringing suit against an employer in court for breach of that agreement. *See DelCostello,* 462 U.S. at 163, 103 S.Ct. at 2290. In sum, we conclude that the six-month statute of limitations for Plaintiff's hybrid claim began to run on November 18, 1994. Because Plaintiff brought the instant action on February 21, 1995, his complaint is not time-barred.

### B. *Breach of the duty of fair representation*

We now turn to the substance of Plaintiff's claims against his union: to wit, whether the union violated its duty of fair representation to Plaintiff by failing either (1) to engage an attorney to represent Plaintiff before the arbitrator, or (2) to raise before the arbitrator the allegation that Lobdell–Emery violated the collective bargaining agreement by denying Plaintiff immediate access to his committeeman. In *Air Line Pilots Ass'n, Inter. v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991), the Supreme Court stated that the duty of fair representation parallels other fiduciary duties and "[j]ust as these fiduciaries owe their beneficiaries a duty of care as well as a duty of loyalty, a union owes employees a duty to represent them adequately as well as honestly and in good faith." *Id.* at 75, 111 S.Ct. at 1134. The Seventh Circuit has interpreted *O'Neill* to require three separate levels of inquiry: (1) did the union act arbitrarily; (2) did the union act discriminatorily; or (3) did the union act in bad faith. *Ooley v. Schwitzer Div., Household Mfg., Inc.,* 961 F.2d 1293, 1302 (7th Cir.), *cert. denied,* 506 U.S. 872, 113 S.Ct. 208, 121 L.Ed.2d 148 (1992). *See also Cleveland v. Porca Co.,* 38 F.3d 289, 295 (7th Cir.1994) (union violates its duty of fair representation to the employees it represents only if its actions are arbitrary, discriminatory, or in bad faith); *Griffin v. Air Line*

*Pilots Ass'n, Inter.*, 32 F.3d 1079, 1083 (7th Cir.1994) (same). With this standard in mind, we turn now to assess the viability of Plaintiff's specific allegations.

### 1. *Failure to have an attorney represent Plaintiff*

 Plaintiff presents no basis in either the provisions of the collective bargaining agreement or in case law for his contention that his union's failure to have an attorney represent him during the arbitration was a breach of the duty of fair representation. Plaintiff's argument boils down to the conclusory statement that an attorney would have done a better job representing Plaintiff's interests than did the UAW international representative who actually represented Plaintiff. Even if we accept the truth of Plaintiff's contention that a lawyer would have done a better job (though Plaintiff gives no reason why this would be so), Plaintiff still has not established that the union failed any component of the tri-partite test. Plaintiff does not explain how the failure to have a lawyer represent him was the result of union discrimination against him, or bad faith on the part of the union. Nor does Plaintiff's contention implicate any arbitrariness on the part of the union. If a lawyer could indeed have done a better job, then the union's decision not to engage one might be ascribed to poor tactics. Of course, the union would likely be able to justify such a decision on any one of several grounds including budgetary constraints. At worst, the union's decision to forego an attorney would have amounted to negligence, though again there is no evidence of negligence. Even this worst-case scenario does not help Plaintiff make his case, for mere negligence on the part a union does not constitute a breach of the union's duty of fair representation. *United Steelworkers of America v.*

*Rawson,* 495 U.S. 362, 372–73, 110 S.Ct. 1904, 1911, 109 L.Ed.2d 362 (1990). Rather, a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational. *Cleveland,* 38 F.3d at 295 (quoting *Air Line Pilots Ass'n, Inter. v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991)). Under this highly deferential standard, a court should not substitute its judgment for that of a union, even if, with the benefit of hindsight, it appears that the union could have made a better call. *Ooley v. Schwitzer Div., Household Mfg., Inc.,* 961 F.2d 1293, 1302 (7th Cir.1992). Following the Seventh Circuit's admonition, we do not find that the union's decision to have a union representative rather than an attorney represent Plaintiff to have been a breach of its duty.[1]

### 2. *Failure to grieve Lobdell–Emery's breach*

 We turn now to Plaintiff's claim that the union should have pursued Plaintiff's breach of contract allegations during the grievance and arbitration proceedings. Judged under the tripartite test, the union's failure to pursue Plaintiff's counterclaim does not appear to be arbitrary, discriminatory, or done in bad faith. Plaintiff contends that Article IV, Section 1(a) of the CBA required Lobdell–Emery to give him immediate access to his committeeman.[2] *See* Pl.'s Response Br., p. 11. Plaintiff does not provide any evidence that the union's decision not to pursue his claim was itself a breach of its duty. The union could very well have decided that the claim was meritless or at least immaterial to the principal question of whether Plaintiff's conduct warranted his discharge. We

---

**1.** We also find persuasive the Ninth Circuit's holding in *Castelli v. Douglas Aircraft Co.,* 752 F.2d 1480 (9th Cir.1985), that a union member did not have a right to be represented by an attorney during the arbitration of the grievance his union filed over his discharge.

Decisions in other circuits hold that it is for the union to decide the circumstances under which an attorney will be supplied to a grievant. Where a union representative assists an

employee at arbitration, the union's failure to provide the employee with an attorney is not a breach of the duty of fair representation. *Id.* at 1483 (internal citation omitted).

**2.** Article IV, Section 1(a) of the CBA provides: "Any employee having a complaint may ask the foreman for his committeeman and shall get him immediately after first stating his complaint to the Foreman." (Pl.'s Response Br., App.B)

need not determine the union's actual reason for not pursuing Plaintiff's claim, because Plaintiff has not established that the failure to pursue that claim affected the arbitrator's decision. Seventh Circuit case law is clear that, to succeed in an action to set aside a arbitral award on the grounds of a breach of the duty of fair representation, a plaintiff must establish that the union's breach actually affected the outcome of the arbitration. *Williams v. Romano Bros. Beverage Co.,* 939 F.2d 505, 508 (7th Cir.1991). As the Supreme Court noted in *Hines v. Anchor Motor Freight,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976):

> [W]here the union actually utilizes the grievance and arbitration procedures on behalf of the employee, the focus is no longer on the reasons for the union's failure to act but on whether, contrary to the arbitrator's decision, the employer breached the contract and *whether there is a substantial reason to believe that a union breach of duty contributed to the erroneous outcome of the contractual proceedings.*

*Id.* at 568, 96 S.Ct. at 1058 (emphasis supplied). *See also Camacho v. Ritz–Carlton Water Tower,* 786 F.2d 242, 246 (7th Cir. 1986) *abrogation on other grounds recognized by Ooley v. Schwitzer Div., Household Mfg., Inc.,* 961 F.2d 1293 (7th Cir.1992) (*Hines* "suggests that there must be a 'breach of duty by the union' that also caused injury in the sense that the employee would have been vindicated but for the union's dereliction"); *White v. Anchor Motor Freight, Inc.,* 899 F.2d 555, 560 (6th Cir.1990) (in hybrid action, absent a finding of an erroneous arbitral decision, inquiry into the union's failure to comply with fair-representation duty becomes immaterial).

In the instant suit, Plaintiff does not contend that, had the union pursued this claim, the arbitrator would have reached a different decision. Nor can the Court infer the likelihood of a different decision where Plaintiff's claim, even if found valid by the arbitrator, clearly would not have affected the arbitrator's findings that Plaintiff had breached two employment rules and probably would not

have affected the arbitrator's finding in regard to the third rule.

In his November 18, 1994 arbitral award, Arbitrator James B. Dworkin found that Plaintiff violated company Rule 8, proscribing abuse of fellow employees, Rule 27, proscribing the use of abusive language against any employee or supervisor, and Rule 13, proscribing an employee's refusal to obey a reasonable order of a foreman or designated supervisor. (Nov. 18, 1994 Arbitration Award, Pl.'s Response Br., App.D, pp. 8–10) In regard to the first rule infraction, the arbitrator stated:

> I think that the evidence presented at the hearing does support the contention that Mr. Vance did engage in some abuse of employees by his behavior on the date of April 8, 1994. Specifically, the grievant admitted saying to Larry Higgs, "Am I gonna have to slap somebody up side the head to get this straightened out?" He was also abusive to Kirk Retz when he said, "What the hell are you telling these guys?" Of course, the abusive behavior escalated into several pushes and a shouting match. There were other instances of abusive behavior toward fellow employees which occurred earlier in time. I need not repeat these at this time. Suffice it to note that I do believe that it was proper for the Company to discipline Mr. Vance for abuse of employees based on the evidence produced at the arbitration hearing.

(*Id.,* p. 8) (internal citations omitted). In regard to the second rule infraction, the arbitrator stated:

> The record is clear on this matter. As has been discussed above, Mr. Vance admitted to several instances of abusive language. Further, the transcript contains several other instances where Mr. Vance allegedly used abusive language at the work place. There is no question in my mind that Mr. Vance did use abusive language in several instances on the date of April 8, 1994, in connection with the overtime incident described above.

(*Id.,* p. 10). Regardless of whether Plaintiff should have had immediate access to his committeeman, Plaintiff presents no argument or evidence that presentation of his

breach of contract claim by the union would have had any effect on the arbitrator's finding that he had engaged in abusive behavior and had used abusive language and deserved to be disciplined. Nor do we believe that Plaintiff could make any persuasive argument to that effect.

In regard to the third rule infraction, the arbitrator found that Plaintiff failed to obey an order on April 8, 1994 when he refused to go to his work area after the meeting in the office with Mr. Higgs and Mr. Kiser. The arbitrator stated in his award:

> Donny Kiser testified that he told Mr. Vance to stay up front in the welding area (his work area) while he and Mr. Higgs went to consult with Kirk Retz. While they were discussing this matter with Mr. Retz, Mike Vance came up and joined in the discussion. This is where the shoving incident occurred, as has been described earlier. Mr. Higgs also testified that "Donny directed or asked Mike to go back to work." Mr. Vance testified that after the meeting among the three of them, "I went back to the line." Based on this testimony, I do believe that Mr. Vance was directed to return to his work site, while Mr. Higgs and Mr. Kiser went to speak with Kirk Retz about the overtime interpretation issue. The fact that Mr. Vance showed up unannounced at the work site of Kirk Retz and then got into an argument with Mr. Retz over this overtime issue indicates to me that he was indeed refusing to obey an order of a foreman or designated supervisor. In fact, his refusal to obey this order was quite significant in that Mr. Vance's behavior after joining in this discussion was one of the key factors which ultimately led to his discharge.

(*Id.*, p. 9) (internal citations omitted). Plaintiff argues that the direct order that he refused to follow was contrary to his right under the collective bargaining agreement to have immediate access to his committeeman. Even if this were true, and Plaintiff's argument is too cursory to be persuasive, Plaintiff has not explained how the company's violation of his alleged right affected the arbitrator's decision. The logical argument to make would run as follows: if the arbitrator had

known that Plaintiff was disobeying an invalid order, then the arbitrator would not have found Plaintiff to have violated Rule 13. This is an inquiry we need not make because there is no evidence that the arbitrator would have absolved Plaintiff of violating Rule 13 with this additional information, or, even if he had absolved him, that he would not have upheld the discharge on the basis of Plaintiff's abusive behavior and abusive language.

As it turns out, this argument is not the one that Plaintiff makes. Instead, Plaintiff makes the wholly conclusory allegation that as a result of his not being afforded immediate access to Mr. Retz and as a result of Mr. Retz having discussed the overtime issue for several minutes with Messrs. Higgs and Kiser before Plaintiff was able to speak with him, Mr. Retz "was effectively 'poisoned' as to his representation of [Plaintiff's] disagreement." (Pl.'s Response Br., p. 12) Plaintiff offers no evidence to support this allegation that Mr. Retz's opinion was swayed or that this alleged poisoning of opinion led the arbitrator to uphold Plaintiff's discharge. Therefore, Plaintiff has not meet the burden of showing that the union's alleged breach actually affected the outcome of the arbitration. *See Williams v. Romano Bros. Beverage Co.*, 939 F.2d 505, 508 (7th Cir.1991). Even if Plaintiff were to argue that the union's failure to pursue the counterclaim affected the arbitrator's decision, any such argument would suffer from circular reasoning: Plaintiff asks the Court to infer that the union acted arbitrarily, discriminatorily and in bad faith because it did not pursue his counterclaim. But how would Plaintiff's counterclaim have been relevant to the question before the arbitrator? Plaintiff can answer only that as a result of the company's failure to provide him immediate access to his committeeman, the committeeman was "poisoned" against his interest. Plaintiff is assuming his conclusion.

The remainder of Plaintiff's brief is devoted to unsubstantiated allegations that the union was out to get him and conspired with management to set him up. Despite these allegations, Plaintiff has failed to make a sufficient showing that the union in any way breached its duty of fair representation. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323,

106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Establishing a breach of the union's duty is an essential element of Plaintiff's case because it is only in the case of a breach that Plaintiff has standing to challenge the arbitral award. Because Plaintiff has failed to establish this essential element of his case, summary judgment in favor of Lobdell–Emery is appropriate.

## IV. Conclusion

For the reasons stated above, the Court finds that Plaintiff's suit to vacate the November 18, 1994 arbitral award on the basis of a breach of his union's duty of fair representation is not barred by the statute of limitations. However, the Court finds that Plaintiff has not met his burden of establishing that the union's conduct during its grievance and arbitration of Plaintiff's discharge constituted a breach of its duty of fair representation. Nor has Plaintiff established that but for the union's conduct, the arbitrator would have reached a contrary conclusion. Therefore, the Court GRANTS Defendant Lodbell–Emery's motion for summary judgment.

It is so ORDERED.